TttRLeY, J.
delivered the opinion of the court.
The questions presented for consideration in this case arise upon the following statement of facts. On the 13th day of October, 1821, Hugh Hinklin executed his last will and testament, by which he devised to negro man Will and negro woman Suky, his wife, their freedom at his death, and bequeathed them the use of a part of the land on which he resided, during their lives. This will was duly proven at the February term, 1822, of the county court of Jackson, and letters testamentary regularly granted to the executors, Thomas Hinklin and Avery Hinklin. No steps were taken by the executors under the will to procure an order of emancipation from the county court. Avery Hinklin, one of the executors, left the State shortly after the death of testator, and was absent for many years, leav *570 ing Thomas Hinldin, the other' executor, to superintend the execution of the will, which he did; bringing the same to a final settlement in all things connected therewith, saving the emancipation of said negroes, and died several years since.
The negroes were regarded and treated by every body as free, from the date of the probate of the will. They continued to live upon the land bequeathed to them, till some time in the month of May, 1840, when Suky, having become nearly blind and unable to support herself, came to the residence of Adam C. Hamilton, the defendant to the original bill, where she remained till some time in October, 1840, when she died. After the death of Hugh Hinklin, the testator, said negro woman, Suky, had two children, Almira and Turner, the complainants in the cross-bill. At the April term, 1840, the negro woman, Suky, and her two children, Almira and Turner, by their next friend the said Adam G_ Hamilton, filed their petition in the county court of Jackson, setting forth, the foregoing facts, and asking to be emancipated according to law, which was ordered, upon the bond of James Nevins and Zaddock Mayfield executed as required by statute. The children, Almira and Turner, are in the possession of defendant Hamilton, they having been bound as apprentices to him by the county court of Jackson.
On the 9th day of September, 1840, the complainant, Avery M. Hinldin, filed his bill of complaint, asking that said negroes be delivered up to him as slaves, to be distributed to those who may be entitled to them; and that Hamilton account for their hire during the time-they have been in his possession. The cross-bill is filed to resist this application, and have a declaration of the freedom of the complainants therein under the order of the county court of Jackson, made as aforesaid, at the April term, 1840, and that the complainant in the original bill be enjoined from prosecuting any action of detinue at law for the recovery of their persons, which has been, or is threatened to be commenced.
In the consideration of the questions arising in this case, it is not deemed necessary to enter into a minute investigation of the relation of master and slave, the power of emancipation, the mode *571 of exercising it-, oí the fights acquired under it; they have been often the subject of much consideration by our courts, and have been perhaps sufficiently adjudicated upon. It will suffice for the present to observe, that it is well settled, and upon correct principles, that the State, as a body politic, has a deep interest in the subject, and possesses the undeniable right to regulate the manner in which manumission shall be made, the extent of rights to be acquired under it, orto prohibit it altogether. The question then for direct determination in the present case, is whether the complainants in the cross-bill, stand in such an attitude as to enable this court to decree their freedom, and protect them in the enjoyment of it, under the municipal regulations of the State upon the subject of emancipation. It is contended for the original complainant, that they do not;. that they are yet slaves; that the-order of the county court of Jackson emancipating them is void, for want of power to make it, and that this court has no jurisdiction to decree their freedom under the will.
To secure the emancipation of. a slave under our law, two things are absolutely necessary; the consent of the owner expressed, and the assent of the State, given in the manner pre^ scribed by law. Several statutes have been enacted on this subject, none of which it is deemed necessary to examine, except those of 1829, ch. 29, and of 1831, ch. 101, which it is believed are alone applicable to the case under consideration.
The act of 1829, provides, “That where any person by his last will and testament, shall have directed any slave or slaves to be set free, it shall be the duty of the executor or administrator, with the will annexed, to petition the county court accord-Iingly; and if the executor or administrator shall fail or refuse to do so, it shall be lawful for such slave or slaves to file a bill in equity by their next friend; and upon its being made satisfactorily to appear to the court, that said slave or slaves ought of right to be set fi-ee, it shall be so ordered by the court, upon bond,” &c.
The act of 1831, provides, that the act of 1829 “shall in no case be so construed, so as to extend to -any case where any person may by their -last will and testament have directed any *572 slave or slaves to be set free before the passage of the before recited act, which this is intended to amend, but in all such cases, where any suit shall have been instituted in the district chancery court under the provisions of the act which this is intendedto amend, it shall be the duty of the chancellor at the first term of said court after the passage of this act, to have the same stricken from the docket;” and it is made the duty of the clerk to transmit the same to the county court for trial.
It is thus seen, that the act of 1829, makes it the duty of an executor or administrator, with the will annexed, in all cases of emancipation under the will, to apply to the county court for the assent of the State to the emancipation, and if he neglect to do so, the slave or slaves may by their next friend file a bill in the chancery court for that jrarpose, which may be decreed by the court. The act of 1831, limits this exercise of power by the chancery courts to cases of wills made after the passage of the act of 1829.
Then as the law now stands, in all cases of emancipation by will executed since the passage of the act of 1829, if the executor or administrator fail or refuse to apply in behalf of the slave to the county court, for the assent of the State to the manumission, a bill may be filed in the chancery court for that purpose, but in all cases of such devise, by will made and executed before the passage of the act, the power of the chancery court to act, by decreeing the freedom, is taken away; but it is still the duty of'the executor or administrator, under the express provisions of the act of 1829, to apply to the county court for that purpose; and if he refuse without good and legal reason therefor, he is guilty of a gross abuse of a high trust.
The will in the case now under investigation having been made before the passage of the act of 1829, viz, in 1821, the court has no power to act by a direct decree of freedom. The executor refuses to comply with the directions of the act; and is not only seeking to abuse his trust himself, hut has the impudence to ask this court to aid him therein; and it has been seriously argued, that it is our duty to do so.
The simple statement of the case is sufficient to show, that the complainant in the original bill has no right in a court of *573 chancery, and that he would be repelled therefrom without hesitation. But there is a question of more importance, involving the claims of the complainants in this cross-bill, which is worthy of great consideration; and that is, whether they are hot in such a position as to ask this court, not to decree their freedom under the act of 1829, but to declare it as having been already decreed by the county court of Jackson, at their April term, 1840. We have seen that the act of 1829, has made it the express duty of the executor to apply to the county court of Jackson, for their emancipation. This has not been done; but the county court of Jackson, upon their application by their next friend, has given the assent of the State, and in due form declared them free. If the executor refuse or neglect to execute the trust reposed in him by the will, is the slave remediless, and shall he lose his freedom and remain in bondage? Surely not. The trust is a naked one, unaccompanied by any interest; the devise of freedom and the assent of the State consummate the right. The executor is the mere instrument through which the assent of the State is to be obtained, and if he perversely refuse to act, a court of chancery, when necessary, would compel him, and in case of his death, would appoint another trustee to act in his stead. That this is so upon every principle of equity touching the subject, we do not think admits of controversy. But is it necessary in this case, to resort to this power in order to effectuate justice between the parties? We think not.
In the first place, we think it by no means certain under a fair construction of the acts of 1829, 1831, that where in cases of a devise of freedom by will before the act of 1829, in which the executor or administrator fail or refuse to apply to the county court for a confirmation of the freedom given by the will, the slave may not petition the county court by his next friend for that purpose. The act of 1829 authorized him to file a bill in the chancery court; and that of 1831 does nothing more than cut off the jurisdiction of the chancery court in such cases, upon wills made before the passage of the act of 1829, and directs a transfer of the causes pending in the chancery court, upon the subject for adjudication to the county court. It may *574 be well argued, if it were the intention of the legislature to give the county court jurisdiction of cases pending in the chancery court, where the executor or administrator had failed or refused to execute his trust; that it was their intention to give it jurisdiction of all cases which might arise thereafter of a similar character; in other words, the act of 1829 was passed for the relief of slaves emancipated by will. It in the first place makes it the duty of the executor or administrator, with the will annexed, to apply to the county court by petition on behalf of the slaves, if he fail or refuse so to do. In the second place, it authorizes a bill to be filed in the chancery court by the next friend of the slaves.
The act of 1831, is not designed to deprive the slave of any right, acquired under the will, but to change the tribunal in a specified class of cases. It takes away the jurisdiction of the chancery court in cases of wills made before 1829, and by express words, transfers such cases pending to the county court. If they give the jurisdiction of cases pending, is it not fair argument to say that they intended to give jurisdiction of like cases which might arise? Otherwise a class of cases would be unprovided for, which we can hardly suppose was designed.
The chancery court has full power upon all cases of wills, made after the passage of the act of 1829; the county court upon all cases preceding the passage of the act of 1831; but in the case of a will made before the act of 1829, in which no bill had been filed previous to the act of 1831, if the executor or administrator fail or refuse to do his duty, there is no tribunal to act upon the petition of the next friend, unless it be the county court under a fair construction of the act of 1831.
If the county court have the power to act upon the petition of the next friend of the slave, in the case supposed, this cause is at an end, for this has been done by the county court of Jackson, at its April term, 1840. But suppose that such is not the fair construction of the act of 1831, yet in the second place we hold that the action of the county court, in the order of emancipation in this case, is not void. The devise of emancipation in the will, or the act under which the right of freedom arises, it is true, is not perfected until the assent *575 of tlie State thereto is given. The power to give this assent has been lodged in the county court, and it has been given by this agent upon a full statement of all the facts attending it.
Who has been injured? who has the right to complain? The owner? there is no owner. The devisee was the owner; he ceased to be so upon his death, and having devised the freedom of the slaves, they descend to no one. The executor? he has no claim to them, unless perhaps he could show, that the creditors of the estate were i nterested in the question, there being a deficiency of assets; but this is not pretended; having no claim, his assent is not necessary to their freedom, though the assent of the owner is in all cases; being a mere agent appointed to apply for the assent of the State, if the State give it without his application, upon what principle shall it be held bad? It is the substance of things, and not forms, which must control us in cases of this kind. We have said that we have the power to compel the executor to execute his trust; if it has been executed, and properly executed without him, why should we set it aside and at his request without adequate cause, permit him to interfere with persons enjoying rights acquired under it, no persons claiming an interest being dissatisfied?
We will not do so, but declare that the right of freedom, given to the complainants Almira Hinklin and Turner Hinklin, children of the negro woman Suky, by the will of Hugh Hink-lin and the order of the county codrt of Jackson, made at its April term, 1840, is perfect and complete and enjoin the complainant, Avery Hinklin, the surviving executor of said last will and testament, from hindering and molesting them in the enjoyment thereof, by any suit at law, now pending or to be brought hereafter,., or in any other manner under any pretended right as executor aforesaid. Decree accordingly with cost.